*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

UNPUBLISHED
June 11, 2020

Plaintiff-Appellee,

v

No. 344029
Berrien Circuit Court

ANTHONY QUANTEZ MORROW,

LC No. 2017-002540-FH

Defendant-Appellant.

Before: K. F. KELLY, P.J., and FORT HOOD and SWARTZLE, JJ.

PER CURIAM.

Defendant appeals as of right his jury trial conviction for one count of delivery of methamphetamine, MCL 333.7401(2)(b)(*i*).[1]  He was sentenced as a fourth-offense habitual offender, MCL 769.12, to 144 months to 40 years' imprisonment.  Finding no errors warranting reversal, we affirm.  This appeal is decided without oral argument.  MCR 7.214(E)(1)(b).

## I. BASIC FACTS

Detective Zachary Hathaway was working for a drug task force when a caller[2] provided defendant's name, a phone number, and information that "Tez" would sell him drugs.  Detective Hathaway identified defendant by searching for the phone number provided by the caller on Facebook.  The phone number was linked to a Facebook profile page named "Tez Morrow."  Additionally, the detective retrieved defendant's picture and information from the Secretary of State website.  After verifying initial information provided by the source, Detective Hathaway dialed defendant's phone number on April 18, 2017, and made arrangements to buy a "bill" of

---

[1] Defendant was charged with three counts for three separate deliveries, but the jury acquitted him of two of the charges.

[2] Detective Hathaway did not specify if the caller provided an anonymous tip or if a confidential informant was used.  However, in light of the steps the detective took to identify defendant and establish his own contacts and drug sales, the record seemingly indicates that an anonymous tip occurred.

-1-

"ice." These slang terms indicated that he sought to purchase $100 of methamphetamine. Defendant directed the detective to a specific location. Once there, defendant advised that his uncle, dressed in blue coveralls, would complete the purchase. Detective Hathaway made the exchange with defendant's runner. After the sale was complete, defendant called to ensure that the detective was satisfied, and they agreed to engage in additional transactions.

On April 24, 2017, Detective Hathaway contacted defendant again to purchase a "bill" of "ice." This time, defendant directed the detective to go to a market. Defendant eventually advised that he was present and told Detective Hathaway to go inside the market. Once inside, defendant personally appeared in front of the detective and handed him a foil gum wrapper containing a substance. Detective Hathaway gave defendant $100, and he left. Finally, on May 8, 2017, the detective contacted defendant and again requested a "bill" of "ice." Defendant told Detective Hathaway to go to a park where he would find a man riding a bike and wearing a red hat. This time, the detective completed the $100 drug transaction with defendant's runner. After the transaction, defendant called Detective Hathaway because he only received $80 from his runner. The detective advised that he paid $100 as usual, and they agreed to continue doing business. However, defendant never answered subsequent phone calls. The substances received in the sales tested positive for methamphetamine. Despite the three transactions, the jury only convicted defendant for the offense in which he physically performed the exchange.

## II. INEFFECTIVE ASSISTANCE OF COUNSEL

Defendant argues that the trial court erred by denying his motion for a new trial because defense counsel was ineffective for failing to support his primary defense at trial.

"Whether a defendant received ineffective assistance of trial counsel presents a mixed question of fact and constitutional law." *People v Armstrong*, 490 Mich 281, 289; 806 NW2d 676 (2011). This Court reviews a trial court's factual findings for clear error and its conclusions of law de novo. *People v Miller*, 326 Mich App 719, 726; 929 NW2d 821 (2019). When no *Ginther*[3] hearing is held in the trial court, appellate review is limited to mistakes apparent on the record. *Id*.

"Criminal defendants have a right to the effective assistance of counsel under the United States and Michigan Constitutions." *People v Schrauben*, 314 Mich App 181, 189-190; 886 NW2d 173 (2016). To obtain a new trial premised on ineffective assistance of counsel, a defendant must demonstrate that counsel's performance fell below an objective standard of reasonableness and that there is a reasonable probability that but for counsel's errors, the result of the proceeding would have been different. *People v Vaughn*, 491 Mich 642, 669; 821 NW2d 288 (2012). It is presumed that defense counsel was effective, and a defendant must overcome the strong presumption that counsel's performance was sound trial strategy. *People v Trakhtenberg*, 493 Mich 38, 52; 826 NW2d 136 (2012). "[D]ecisions regarding what evidence to present and which witnesses to call are presumed to be matters of trial strategy, and we will not second-guess strategic decisions with the benefit of hindsight." *People v Dunigan*, 299 Mich App 579, 589-590; 831 NW2d 243 (2013). "Failing to advance a meritless argument or raise a futile objection does not constitute ineffective assistance of counsel." *People v Ericksen*, 288 Mich App 192, 201; 793

---

[3] *People v Ginther*, 390 Mich 436, 443; 212 NW2d 922 (1973).

NW2d 120 (2010). "The fact that defense counsel's strategy may not have worked does not constitute ineffective assistance of counsel." *People v Stewart (On Remand)*, 219 Mich App 38, 42; 555 NW2d 715 (1996). However, counsel may be found ineffective for the strategy employed when it is not a sound or reasonable strategy. *People v Dalesandro*, 165 Mich App 569, 577-578; 419 NW2d 609 (1988). The burden of establishing the factual predicate for a claim of ineffective assistance is on the defendant. *People v Hoag*, 460 Mich 1, 6; 594 NW2d 57 (1999).

## A. EXPERT TESTIMONY

First, defendant contends that trial counsel erred in failing to present an expert on misidentification evidence to contest the testimony by Detective Hathaway that defendant personally completed the exchange of methamphetamine on April 24, 2017, and an expert to address false and cloned Facebook accounts. We disagree.

A defense counsel's failure to adequately investigate and attempt to secure appropriate expert assistance in the preparation and presentation of a defense may constitute ineffective assistance of counsel. *People v Ackley*, 497 Mich 381, 383; 870 NW2d 858 (2015). "[A] defense attorney may be deemed ineffective, in part, for failing to consult an expert when counsel had neither the education nor the experience necessary to evaluate the evidence and make for himself a reasonable, informed determination as to whether an expert should be consulted or called to the stand . . . ." *Trakhtenberg*, 493 Mich at 54 n 9 (citations and quotation marks omitted). The failure to "attempt to consult an expert with the scientific training to support the defendant's theory of the case" may fall below "an objective standard of reasonableness." *Ackley*, 497 Mich at 383. Ineffective assistance of counsel may be established by the failure to call witnesses if it deprives the defendant of a substantial defense. *People v Anderson*, 322 Mich App 622, 631; 912 NW2d 607 (2018). Further, the failure to adequately investigate constitutes ineffective assistance if it undermines confidence in the trial's outcome. *Id.*

Eyewitness testimony is not necessarily reliable. See *People v Anderson*, 389 Mich 155, 172; 205 NW2d 461 (1973) (listing reasons for the weakness of eyewitness testimony), overruled on other grounds by *People v Hickman*, 470 Mich 602, 603-604; 684 NW2d 267 (2004). Although defense counsel can be ineffective by not thoroughly investigating the possibility of calling an expert, this is generally limited to technical matters in which defense counsel does not have education or experience. See *Ackley*, 497 Mich at 391.

Rather than call expert witnesses, defense counsel cross-examined Detective Hathaway and surveillance officers, to point out their lack of contact with defendant at the scene, highlight the brevity of any contact, and demonstrate the lack of physical evidence correlating defendant to the drug exchanges. For example, defense counsel elicited from Detective Hathaway that no video surveillance was taken from the scene during the in-person drug deal, that officers never recovered the marked money that they gave to defendant, and that Detective Hathaway saw a picture of defendant before going to the April 24 drug exchange. This reliance on cross-examination is not per se below an objective standard of reasonableness. Furthermore, in this case, "[t]rial counsel may reasonably have been concerned that the jury would react negatively to perhaps lengthy expert testimony that it may have regarded as stating only the obvious: memories and perceptions are sometimes inaccurate." *People v Cooper*, 236 Mich App 643, 658; 601 NW2d 409 (1999).

Moreover, unlike cases in which the failure to consult an expert has been recognized as ineffective assistance, this case did not involve a "battle of the experts" where the prosecution presented a "technical subject matter most critical to the case." *Ackley*, 497 Mich at 392, 397 (quotation marks and citation omitted). In this case, the prosecution presented a nonexpert eyewitness who the jury was free to believe or disbelieve based on the circumstances.

Defendant's theory of misidentification due to Detective Hathaway's predisposition from viewing a single Facebook photo and the briefness of his interaction did not require an expert "necessary to explain to the jury how defendant's theory was plausible." See *People v Agar*, 314 Mich App 636, 647-648; 887 NW2d 622 (2016), vacated in part and reversed in part on other grounds 500 Mich 891 (2016) (concluding that it was an abuse of discretion for the trial court to deny funds for an expert where "denial of an expert prevented defendant from testing the conclusions reached by the prosecution's expert"). It was unnecessary to present an expert to the jury to explain that a short interaction and Detective Hathaway's alleged predisposition from viewing the Facebook photo may have affected his memory. Therefore, it cannot naturally follow that defense counsel was ineffective for failing to consult an expert in this case. See *Cooper*, 236 Mich App at 658. Therefore, we conclude that the failure to employ an identification expert did not fall below a reasonable standard.

Further, defendant submits that trial counsel was ineffective for failing to call an expert to address Facebook profile duplication or cloning. However, at this posture of the case, defendant had the burden of establishing the factual predicate to support his claim. *Hoag*, 460 Mich at 6. Yet, he failed to provide an affidavit declaring that he, nor someone acting on his behalf, did not create the Facebook page at issue. Thus, the factual conclusion underlying the need for an expert, to show that a false Facebook page was made to set up defendant, was not established. Accordingly, defendant failed to meet his burden in establishing an ineffective assistance of counsel claim pertaining to expert testimony.

## B. CONFIDENTIAL INFORMANT

Finally, defendant claims that defense counsel was ineffective for failing to investigate the confidential informant. We disagree.

"Generally, the people are not required to disclose the identity of confidential informants." *People v Henry (After Remand)*, 305 Mich App 127, 156; 854 NW2d 114, 134 (2014) (quotation marks and citation omitted). "However, when a defendant demonstrates a possible need for the informant's testimony, a trial court should order the informant produced and conduct an in camera hearing to determine if the informant could offer any testimony beneficial to the defense." *Id*. "Whether a defendant has demonstrated a need for the testimony depends on the circumstances of the case and a court should consider the crime charged, the possible defenses, the possible significance of the informer's testimony, and other relevant factors." *Id*. (quotation marks and citation omitted).

As an initial matter, we note that the record is unclear whether a confidential informant was utilized or whether Detective Hathaway acted pursuant to an anonymous tip. Irrespective of the source of the information, defendant failed to present a factual basis demonstrating a need to learn the source. *Hoag*, 460 Mich at 6. Specifically, defendant failed to demonstrate that the

-4-

Facebook profile accessed by the detective was falsely created. More importantly, Detective Hathaway did not rely on the information provided by the source, but rather, conducted his own investigation to learn of defendant's identify through Facebook as well as the Secretary of State website. The detective then proceeded to test the information by contacting defendant to purchase methamphetamine. Defendant was not convicted of any offense related to the source of the information. Rather, the source merely provided the police with information, and the drug task force conducted an independent investigation. Accordingly, defendant failed to demonstrate that trial counsel's performance was below an objective standard of reasonableness and any resulting prejudice.

## III. AUTHENTICATION

Next, defendant argues that the trial court abused its discretion by permitting the introduction of a picture of defendant despite defendant's objection under MRE 901. Defendant argues that because there was no proof of ownership of the Facebook profile, evidence stemming from this Facebook profile page was not properly authenticated and should have been excluded.

We review a trial court's decision to admit evidence for an abuse of discretion. *People v Bynum*, 496 Mich 610, 623, 852 NW2d 570 (2014). "A trial court abuses its discretion when it makes an error of law in the interpretation of a rule of evidence." *People v Jackson*, 498 Mich 246, 257; 896 NW2d 253 (2015). Preliminary questions of law are subject to de novo review. *People v Mardlin*, 487 Mich 609, 614; 790 NW2d 607 (2010).

The trial court did not err by finding that defendant's Facebook profile picture was properly authenticated.

> In Michigan, challenges to the authenticity of evidence involve two related, but distinct, questions. The first question is whether the evidence has been authenticated—whether there is sufficient reason to believe that the evidence is what its proponent claims for purposes of admission into evidence. The second question is whether the evidence is actually authentic or genuine—whether the evidence is, in fact, what its proponent claims for purposes of evidentiary weight and reliability. [*Mitchell v Kalamazoo Anesthesiology*, PC, 321 Mich App 144, 154; 908 NW2d 319, 325 (2017).]

"The first question is reserved solely for the trial judge. In the role as evidentiary gatekeeper, the trial judge must make the initial determination of whether the evidence is admissible-a question that depends, among other things, on whether the evidence can be authenticated." *Id*. at 155.

"The requirement of authentication or identification as a condition precedent to admissibility is satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims." *People v McDade*, 301 Mich App 343, 352; 836 NW2d 266 (2013) (quotation marks and citation omitted); MRE 901(a). "It is axiomatic that proposed evidence need not tell the whole story of a case, nor need it be free of weakness or doubt." *McDade*, 301 Mich App at 353 (quotation marks and citation omitted). "It need only meet the minimum requirements for admissibility." *Id*. (quotation marks and citation omitted).

Authentication may be supported by evidence including, but not limited to, testimony of a witness with knowledge, public records in the form of data collection, and distinctive characteristics. MRE 901(b)(1), (4), and (7). In addition, "a trial court may consider *any* evidence regardless of that evidence's admissibility at trial, as long as the evidence is not privileged, in determining whether the evidence proffered for admission at trial is admissible." *People v Barrett*, 480 Mich 125, 134; 747 NW2d 797 (2008).

In this case, the trial court did not err by finding that the Facebook photograph was appropriately authenticated. Defendant's primary argument is that there was no evidence that defendant authored the Facebook profile or uploaded the photograph to Facebook. However, irrespective of the author of the Facebook profile, Detective Hathaway utilized public records, specifically Secretary of State records, to confirm that the name and photograph depicted on Facebook identified defendant.

Furthermore, defendant's argument is not directed to admission, but rather, it addresses the weight of the photograph's link to defendant. See *Mitchell*, 321 Mich App at 154. The alleged link between defendant and this Facebook picture was extensively challenged by defense counsel at trial. However, ultimately, it was the jury's prerogative to decide whether the Facebook profile picture was authored by defendant or not. See *id.* at 156. In terms of the authenticity of the photograph, Detective Hathaway described the process of his investigation, his discovery of the Facebook profile, its link to the phone number he received from the confidential informant, and his retrieval of a photograph that appeared to show defendant. This evidence was sufficient to establish that the Facebook profile and picture were actually correlated to defendant. MRE 901(a). This claim of error does not entitle defendant to appellate relief.

## IV. CONFRONTATION CLAUSE

Finally, defendant argues that the trial court erred by allowing the prosecution to introduce testimony from a confidential informant through Detective Hathaway, a violation of the Confrontation Clause. We disagree.

To address this issue, we must assume, without deciding, that a confidential informant contacted the drug task force as opposed to an anonymous tip. In any event, we conclude that the defendant cannot establish plain error as a result of Detective Hathaway's testimony regarding why he initiated an investigation of defendant.

"We review unpreserved constitutional issues for plain error affecting defendant's substantial rights." *Henry (After Remand)*, 305 Mich App at 152. To overcome the plain-error rule, a defendant must show: "1) error . . . occurred, 2) the error was plain, i.e., clear or obvious, 3) and the plain error affected substantial rights." *People v Carines*, 460 Mich 750, 763; 567 NW2d 130 (1990). To establish that an error affected substantial rights, a defendant must demonstrate that "the error affected the outcome of the lower court proceedings." *Id*.

The Confrontation Clause of the United States provides in relevant part "the accused shall enjoy the right . . . to be confronted with the witnesses against him . . . ." US Const, Am VI. "As a rule, if an out-of-court statement is testimonial in nature, it may not be introduced against the

accused at trial unless the witness who made the statement is unavailable and the accused has had a prior opportunity to confront that witness." *Henry (After Remand)*, 305 Mich App at 153.

> A statement by a confidential informant to the authorities generally constitutes a testimonial statement. However, the Confrontation Clause does not bar the use of out-of-court testimonial statements for purposes other than establishing the truth of the matter asserted. Thus, a statement offered to show the effect of the out-of-court statement on the hearer does not violate the Confrontation Clause. Specifically, a statement offered to show why police officers acted as they did is not hearsay. [*Id.* at 155-154, citing *People v Chambers*, 277 Mich App 1, 10-11; NW2d (2007).

Moreover, we recognize that limited testimony explaining why investigators "proceeded in a certain direction with [their] investigation" is permissible and does not violate the Confrontation Clause. *Henry (After Remand)*, 305 Mich App at 154; *Chambers*, 277 Mich App at 11. Accordingly, Detective Hathaway did not present information relayed from his source for the truth of the matter asserted. Rather, the statement of the alleged confidential informant was offered to show why Detective Hathaway would investigate defendant's phone number and why an investigation commenced. This is a permissible purpose in the context of the Confrontation Clause. *Henry (After Remand)*, 305 Mich App at 154. Further, even if we assume that the prosecutor improperly used the evidence in closing argument, the original admission of the evidence at trial did not constitute a violation of the Confrontation Clause.

Affirmed.

/s/ Kirsten Frank Kelly
/s/ Karen M. Fort Hood
/s/ Brock A. Swartzle